## Russell's Appeal.

Rules of court required that every petition on which should be founded a citation to show cause should be verified by affidavit of the truth of the allegations of fact, and that the denial thereof, or statement of other facts by way of defence, contained in the answer, must in the same way be verified by the affidavit of the respective parties. These rules also provided that the petitioner might, within ten days, file a replication to the answer, verified in like manner; and, on hearing of the rule to show cause, the facts as stated in the petition or answer, and not denied in the manner aforesaid, should be taken *pro confesso*. In an application under these rules, to open a judgment and let the defendant into a defence, *held*, that in the absence of a replication to the answer, the facts therein stated by way of defence to the petitioner's application were to be taken as admitted.

March 3d 1880.   Before SHARSWOOD, C. J., GORDON, PAXSON, TRUNKEY and STERRETT, JJ.   MERCUR and GREEN, JJ., absent.

Appeal from the Court of Common Pleas of *Bucks county:* Of January Term 1880, No. 14.

Appeal of Richard H. Russell, executor of the will of Harriet A. Hough, deceased, from the decree of the court refusing to open a judgment.

The case arose on a confessed judgment, entered on a warrant of attorney, contained in a note for $3000, dated October 16th 1878, payable in thirty days, executed by Harriet A. Hough, the defendant below, to order of James S. Mann, plaintiff below. Judgment was entered the same day, but no execution was ever issued.

Shortly thereafter, Harriet A. Hough applied for a rule to show cause why the judgment should not be opened, and filed an affidavit, which set forth " that the above judgment was entered on the 16th of October 1878, as appears by the record of the court, on a note with confession of judgment purporting to be signed by defendant with her mark, dated the said 16th of October 1878, and payable. thirty days after the date thereof to the order of the said plaintiff. Deponent cannot say whether or not she actually did sign the said note, but on or about that time she did sign with her mark a paper brought to her by the said plaintiff, which may have been the said note, and the circumstances connected with the signing of said paper are as follows : Deponent owned a farm and mill property near Doylestown for many years past, and still owns the same, having until within two months resided on the mill property ; that she is now past seventy years of age, and has been for more than two years last past, and still is, totally blind, and for the past two or three years has had repeated attacks of sickness, which has more or less confined her to her bed and to her room for long periods of time; that for many years past the said plaintiff, out of kindness to deponent, as he professed, has attended to the col-

[Russell's Appeal.]

lection for deponent of the rent of the farm and mill property, which, together, aggregated about $950 a year; that deponent in October last had a severe attack of illness, from which she had little or no hope of recovery, and was confined to her bed; that on or about the 16th of October last past deponent was visited by said plaintiff, who said to her that she ought to compensate him for his many services to her, and to sign a note for some amount to him; deponent replied that she desired to do what was right in the matter, and trusted to him; whereupon plaintiff prepared a paper for deponent to sign, which she did sign with her mark. And deponent further says, that at the time of said signing she was in a very weak condition, and did not expect to recover; that she retained no recollection of the contents of the paper, if she knew it at the time, beyond the fact that she had signed something for plaintiff; that on her partial recovery, a few weeks afterward, deponent sent for her brother, in Philadelphia, to make inquiries concerning the paper she had so signed, which resulted in finding the said judgment-note on which judgment had been entered the same day as its date. And deponent further says, that she is not indebted to the plaintiff for any such sum as named in said note, nor in any other amount, unless it is for money advanced by plaintiff in and about the repair of her farm property, which, in any event, does not exceed one or two hundred dollars, but as to the details of which deponent has no knowledge, nor unless deponent is indebted to plaintiff for commissions for the collection of the farm rent; but, as to this, deponent is not aware of whether he deducted the same or not, but believes she is not so indebted, as plaintiff always gave deponent to understand that there were no commissions due him; but the only positive knowledge deponent has of any debt due by her to plaintiff is the amount of a note for $180, dated April 1st 1876, for money then advanced by plaintiff to deponent, and also a sum of money advanced at various times in small amounts, not exceeding in the aggregate the sum of $50."

On February 28th 1879, the court granted the rule, returnable on the 10th of March 1879.

On the 19th of March 1879, Mann filed an answer, which set forth:

" That true it is that the said judgment was entered on the 16th of October 1878, upon a note, with confession of judgment, signed by the defendant with her mark, dated the 16th of October 1878, and payable to the plaintiff or his order, in the sum of $3000, thirty days after the date thereof, and witnessed by F. Swartzlander and L. Carwithen, and that the same was signed by the defendant with full knowledge and understanding of what she was doing.

" The respondent further says: That a number of years ago, prior to 1860, he was acting as the agent and business manager of

12 NORRIS—25

[Russell's Appeal.]

the defendant, who was then a widow without children, her husband, John Hough, having died about the year 18  , and continued to act as such agent. until about the first day of February last.

"That the estate of the said Harriet A. Hough consists mainly of real estate, being a tract of about 102 acres of land, made up of a grist-mill property and farming land.   That your respondent, during the period before mentioned, rented the said property for the defendant to various parties, the mill being rented to one person, and the farming land to other persons, and the annual rent received from all sources averaged about $950 a year, or more. That during all this period your respondent exercised constant supervision over the property, having the necessary repairs made; the dam supplying the mill with water having in one year broken three times, and your respondent having personally supervised the repairs to the same.   Your respondent further shows : That during the aforesaid period he has also exercised a personal supervision over the defendant's more private and personal matters, securing for her all her personal comforts which she needed, and attending to her private matters, of her business or otherwise, which would make this answer too long if he attempted to specify.

"That during the past year your respondent erected a new barn, wagon-house, hog-pen and chicken-house, upon the property, at the request of the defendant, employing mechanics, purchasing materials, and exercising a personal supervision over the erection of the buildings, at very great inconvenience and disadvantage to himself.   That during the period aforesaid your respondent, for a number of years, resided at Norristown, and was at very great disadvantage and pecuniary loss in going backwards and forward in the performance of his duties as the representative and agent of the defendant, and desired to be relieved upon various occasions, but that the defendant declined to release him, and promised to compensate him liberally for his services and any pecuniary loss or disadvantages which he might incur.

"But there never was any specific contract as to his compensation between himself and the defendant, but that at various times when the respondent mentioned the matter of his compensation to her she invariably promised to pay him, and to pay him well, but asked that the time of payment might be postponed until her property should be sold.

"That the income derived from the said property had been applied by the respondent, under the direction of the defendant, in part to the liquidation of certain indebtedness against the land, and your respondent, knowing that the balance of her income was necessarily consumed by her for purposes of living, was not inclined to exact the payment of his compensation.

"The respondent further says that, prior to the date of the execution of the note, the defendant expressed her desire to pay the

[Russell's Appeal.]

respondent, or to secure him; that she requested him to procure a judgment, so that he might be secured in the real estate. That your respondent, in pursuance of her request, procured the note in question to be drawn in an amount which she had directed, your respondent and the defendant having gone into an examination of the business transacted, and the defendant herself having designated the sum named as being the proper amount of the compensation. That the note in question was executed by the defendant, in the presence of Dr. Frank Swartzlander, who had been her attendant physician for several years, and also in the presence of Lemuel Carwithen, who was a neighbor living near the then residence of the defendant, and who happened to be at the mill upon that occasion. That the consideration of the note was fully explained in the presence of the said two witnesses by the defendant herself, and also by the respondent in her presence; that the note was read over to her by Dr. Swartzlander, and she stated that she understood it, and desired to sign it; that the defendant did sign the note with a full understanding of its contents, and that the same was her voluntary act.

"Your respondent further says that during the whole period of time for which he has acted he has never been paid one dollar by the defendant, or any one for her, for services rendered by him; that it is not true that these services were to be rendered in consideration of kindly feeling, and without compensation, but that, on the contrary, it was always expressly understood and agreed that he was to be paid, and that the defendant is now honestly indebted to him for the full amount of the said judgment-note."

The following extract is from the rules of the Court of Common Pleas of Bucks county:

"§ 7. Every petition, on which shall be founded a citation or rule to show cause, shall be verified by affidavit of the truth of the allegations of facts therein. * * * At or before the time fixed for the return of the citation or rule the respondent may file an answer thereto. If the answer shall contain any denial of the allegations of fact in the petition, or statement of new facts by way of defence, it shall be verified by affidavit. On the filing of the answer the petitioner may, within ten days after notice thereof, file a replication thereto, verified in the same manner. * * * The court may by special order extend or diminish the time for the service of citation or rule or for the filing of answer or replication. On the hearing of the citation or rule to show cause, the facts so stated in the petition or answer, and not denied in the manner aforesaid, shall be taken *pro confesso.*"

No replication was filed to the above answer of the respondent, and on August 12th 1879, on hearing of the affidavit and answer, the court discharged the rule from which order this appeal was taken.

[Russell's Appeal.]

*Hector T. Fenton*, for appellant.—The plaintiff stood in a confidential relation to the defendant, and the burden is on him to show clearly that the transaction was perfectly fair and honest, especially so in the case of an aged person, in the weakness of mind attendant on severe illness, and totally blind, and, therefore, unable to read or see what she was doing.

*George Ross* and *L. L. James*, for appellee.—More than six months elapsed, from the date of the institution of the proceedings to open the judgment, to the period when the matter was finally disposed of by the court, during a large portion of which time the defendant was not sick. When the rule came up for argument no replication had been filed by the defendant, as required by the rules of court and the unvaried practice under them. The court below, therefore, took the answer of the plaintiff as admitted to be true by the defendant, and that shows there was a good consideration for the note.

Mr. Justice STERRETT delivered the opinion of the court, March 22d 1880.

In such cases as this the rules of the court below require the allegations of fact in the petition, the denial thereof, or statement of other facts, by way of defence, contained in the answer, to be verified by the affidavits of the respective parties. They also provide that the petitioner may, within ten days, file a replication to the answer, verified in like manner; and, on hearing of "the rule to show cause," the facts, as stated in the petition or answer, and not denied in the manner aforesaid, shall be taken *pro confesso*. This very properly assimilates the proceeding to the practice in equity, to which, in fact, it belongs. Under our blended system of law and equity, a petition to open a judgment and let the defendant into a defence takes the place of a bill. In the absence of a replication to the answer, the facts therein stated by way of defence to the petitioner's application were to be taken as admitted.

The answer to the petition was filed March 19th 1879, and without replication thereto, as provided by the rule of court, or any testimony on either side, the case was set down for hearing on the petition and answer, and after being continued from June until September, the court, in the exercise of that sound discretion with which it is invested in such cases, refused to open the judgment. The single question for consideration is whether the discretion was rightly exercised.

The note on which the judgment was entered is attested by two subscribing witnesses; and the petitioner does not deny that she signed it as it appears of record. After stating her physical condition, &c., and that the appellee had for many years attended to

the collection of her rents, she says that on or about October 16th 1878, he called on her and said, "she ought to compensate him for his many services," and give him a note. To which she replied, "that she wished to do what was right in the matter, and trusted to him." Whereupon he prepared a note for her to sign, "which she did sign with her mark." She further says that she retained no recollection of the contents of the paper, beyond the fact that she had signed something for him, but ascertained afterwards that it was the note on which judgment had been entered. This is virtually an admission that the note was given in consideration of the services referred to. She then speaks of her indebtedness to him; and says, in substance, that while she may have been indebted for money advanced in and about the repair of her property and for commissions on rents collected, the only positive knowledge she had of any debt due him was a note of $180, dated April 1st 1876, for money loaned, and a further sum, not exceeding in the aggregate $50, advanced at various times in small amounts. The affidavit, as a whole, amounts to little, if anything, more than a denial that there was full consideration for the note, and even that is somewhat doubtfully expressed.

On the other hand, the appellee in his answer alleges that he acted as her agent and business manager for a period of nearly twenty years, for which he had never been compensated; that, prior to giving the note in question, she expressed a desire to pay him, and requested him to procure a judgment so that he might be secured in the real estate; that, in pursuance thereof, he procured the note to be drawn in the sum which she designated "as the proper amount of compensation;" that the note so prepared was executed in the presence of the subscribing witnesses, Dr. Swartzlander, her physician, and Mr. Carwithen, one of her neighbors; that the consideration of the note was fully explained in their presence, and after it was read over to her by Dr. Swartzlander she stated that she understood it, and desired to sign it; and did then and there sign it, voluntarily and with a full understanding of its contents. The answer further avers that it was always expressly understood and agreed that the services rendered were to be compensated; that nothing was ever received on account, and that she was justly indebted in the amount of the note.

The answer is full and explicit as to the execution of the note and the consideration for which it was given. In the absence of a replication or traverse of the answer, or any testimony tending to rebut the bona fides of the transaction as therein detailed, the court was clearly right in discharging the rule. Under the circumstances, the learned judge could not have done otherwise without utterly ignoring his own rules of court, and violating well-established principles of practice. Nearly six months elapsed between the filing of the answer and the hearing. Ample time

was thus afforded in which to file a replication and take the testimony of the subscribing witnesses and others. The fact that it was not done justifies the inference that their testimony, if it had been taken, would have strengthened the material allegations of the answer. It is not to be presumed that learned counsel, fully awake to the interests of his client, would fail to file a replication to the answer, and thus prevent the allegations of fact therein contained from being taken *pro confesso* under the rule, if he had thought those allegations could have been successfully controverted, or that he would submit the case without calling the subscribing witnesses to the note unless he was satisfied that their testimony would not strenghten his client's case.

It is very true that, in cases where fiduciary relations are shown to have existed, courts will exercise great liberality in granting equitable relief, but this does not mean that established rules of evidence and practice are to be utterly disregarded, and judgments opened upon a mere suggestion of bad faith or want of consideration.

We think the discretion of the court below was rightly exercised in discharging the rule to show cause.

> The order of court discharging the rule, &c., is affirmed, and appeal dismissed at the costs of the appellant.

Mr. Justice TRUNKEY filed a dissenting opinion, in which Chief Justice SHARSWOOD concurred.